Carole Keeton RYLANDER, Comptroller of Public Accounts of the State of Texas; and John Cornyn, Attorney General of the State of Texas, Appellants,

v.

ASSOCIATED TECHNICS COMPANY, INC.; Olmos Abatement, Inc.; and Stacliff (Milam) Associates, LP, Appellees.

No. 03–98–00322–CV.

Court of Appeals of Texas, Austin.

March 25, 1999.

Rehearing Overruled April 29, 1999.

John Cornyn, Attorney General, Esteban H. Rodriguez, Assistant Attorney General, Austin, for Appellant.

Timothy M. Trickey, Austin, for Appellee.

Before Justices JONES, B.A. SMITH and YEAKEL.

LEE YEAKEL, Justice.

Appellants Carole Keeton Rylander, Comptroller of Public Accounts of the State of Texas, and John Cornyn, Attorney General of the State of Texas,[1] appeal the district

---

1. This appeal was originally filed in the names of the predecessors to the present Attorney General and Comptroller. We have substituted the current holders of those offices as the correct parties to this proceeding. See Tex.R.App. P. 7.2(a). Martha Whitehead, then Treasurer of the State of Texas, was originally named as a defendant in this cause. The office of state treasurer was

court's final judgment in favor of appellees Associated Technics Company, Inc., Olmos Abatement, Inc., and Stacliff (Milam) Associates, LP, granting appellees a refund of taxes previously paid arising from services provided in the abatement of asbestos.[2] The Comptroller[3] contends that a portion of asbestos-abatement activity is taxable as "real property repair and remodeling" pursuant to section 151.0047 of the Texas Tax Code[4] and does not qualify as an exclusion for the removal of hazardous waste under section 151.0048.[5] We will affirm the judgment of the district court.

## BACKGROUND AND PROCEDURAL HISTORY

Asbestos is a hazardous substance that causes serious damage to the lungs and respiratory system of those who inhale asbestos fibers. Initially, it was mined as a natural material, processed into fibers, and converted into different products that were often used in the construction of buildings because of its insulation and fireproofing qualities. As its dangers eventually became widely known, contractors ceased using asbestos materials in building construction. Asbestos-related activities are now highly regulated by the government. *See* Tex.Rev.Civ. Stat. Ann. art. 4477–3a (West Supp.1999); 25 Tex. Admin. Code § 295.60 (1998). Many building owners have also made efforts to remove the hazardous material from their buildings.

The asbestos-abatement process is the actual removal of asbestos. " 'Asbestos abatement' means the removal, the encapsulation, or the enclosure of asbestos for the purpose

of or that has the effect of reducing or eliminating concentrations of asbestos fibers or amounts of asbestos-containing materials." Tex.Rev.Civ. Stat. Ann. art. 4477–3a, § 2(2) (West Supp.1999). Generally, a consulting firm surveys a building to determine the exact location of the asbestos and the extent of removal required. The building owner then hires a provider of asbestos-abatement services to remove the asbestos from the building.

The asbestos-abatement-services provider prepares the worksite to ensure that asbestos fibers are contained within that area. Many precautions, including the placement of warning signs at the worksite, the use of respirators, and the wearing of protective suits, are taken to ensure worker and public safety. As soon as the asbestos is removed from the structure, it is placed in bags marked with warning tape. While some workers are continuously cleaning the worksite, others are removing the material from the structure. The bags are then hauled to an authorized landfill.

Appellees Associated Technics Company, Inc. and Olmos Abatement, Inc. are licensed providers of asbestos-abatement services. Appellee Stacliff (Milam) Associates, LP, a property-management company, represents a building owner who purchased asbestos-abatement services.[6]

The Tax Code lists many different services that are subject to the sales and use tax, including "real property service" and "real property repair and remodeling." Tex. Tax

---

abolished effective September 1, 1996, and the treasurer's functions were transferred to the comptroller. *See* Tex. Const. art. IV, § 1; Act of Nov. 7, 1995, 74th Leg., S.J.R. No. 1, § 1, 1995 Tex. Gen. Laws 6427, 6427 (temporary provision, since repealed, 1997).

2. Sales and use taxes were assessed for the period from February 1, 1991 through October 31, 1994.

3. The interests of the Comptroller and the Attorney General do not diverge in this case. For convenience, we will refer to both collectively as the "Comptroller."

4. *See* Act of 1991, 72d Leg., R.S., ch. 705, § 11, 1991 Tex. Gen. Laws 2520, 2521 (Tex. Tax Code Ann. § 151.0047 (West 1992), since amended).

For convenience, we will cite the most recent version of the Tax Code.

5. *See* Act of 1991, 72d Leg., R.S., ch. 705, § 12, 1991 Tex. Gen. Laws 2520, 2521 (Tex. Tax Code Ann. § 151.0048(3)(A) (West 1992), since amended). For convenience, we will cite the most recent version of the Tax Code.

6. Tax liability applies equally to a provider as well as a recipient of taxable services. *See Bullock v. Delta Indus. Constr. Co.*, 668 S.W.2d 502, 504 (Tex.App.—Austin 1984, no writ). For convenience, we will refer to appellees collectively as "Associated Technics."

Code Ann. §§ 151.0101(11), .0101(13) (West 1992). According to the Tax Code, "real property service" includes "the removal or collection of garbage, rubbish, or other solid waste," but excludes the removal of hazardous waste from taxation. *Id.* § 151.0048(a)(3) (West Supp.1999).

While the Comptroller recognizes that asbestos is a *hazardous substance,* she has established a policy that asbestos products do not become *hazardous waste* until actually separated from the building in which they are contained. She characterizes the separation, as opposed to the removal or disposal of asbestos, as "real property repair and remodeling" under section 151.0047 of the Tax Code.[7] Pursuant to this policy, the Comptroller assessed the sales and use tax against Associated Technics. Associated Technics brought suit seeking a declaration that no portion of the asbestos-abatement process constitutes a taxable transaction, and for a refund of the monies paid as a result of the assessed sales and use tax on asbestos-abatement services. Associated Technics argues that asbestos removal qualifies as the removal of hazardous waste and is excluded from the sales and use tax by section 151.0048(a)(3)(A) of the Tax Code. The district court agreed. On appeal, the Comptroller raises two issues addressing whether asbestos-abatement services qualify as taxable services under the Tax Code. First, the Comptroller asks whether separation of asbestos is taxable as "real property repair and remodeling"; and second, whether the exemption for the removal of hazardous waste applies to the entire asbestos-abatement process.[8]

## DISCUSSION

■ The Comptroller challenges the district court's conclusion that asbestos-abatement activity is not taxable as a matter of law. We review a trial court's legal conclusions *de novo.* *See Sharp v. Park 'N Fly of Tex., Inc.,* 969 S.W.2d 572, 574 (Tex.App.— Austin 1998, pet. denied) (citing *University*

of Tex. Law Sch. v. Texas Legal Found., 958 S.W.2d 479, 481 (Tex.App.—Austin 1997, no pet.)). In reviewing the district court's judgment, we focus our attention on the language of the Tax Code. *See Hammerman & Gainer, Inc. v. Bullock,* 791 S.W.2d 330, 332 (Tex. App.—Austin 1990, no writ). The primary rule of statutory construction is that a court must look to the intent of the legislature and must construe the statute so as to give effect to that intent. *Park 'N Fly,* 969 S.W.2d at 574 (citing *Union Bankers Ins. Co. v. Shelton,* 889 S.W.2d 278, 280 (Tex.1994)). We look first to the plain meaning of a statute. *See Meno v. Kitchens,* 873 S.W.2d 789, 792 (Tex.App.—Austin 1994, writ denied). If section 151.0047 is properly construed as imposing a tax on the separation of asbestos, then the Comptroller's assessment of sales and use tax against Associated Technics was appropriate; if, on the other hand, section 151.0048 exempts all asbestos-abatement services from taxation, the Comptroller must refund the tax monies paid by Associated Technics.

The Comptroller's assertion that a portion of the asbestos-abatement process is taxable as "real property repair and remodeling," is based on her categorization of the asbestos-abatement process as two distinct activities: (1) the separation of the asbestos from a structure; and (2) the disposal of the asbestos after it has been removed.

■ Statutory exemptions from taxation are strictly construed. *See Quorum Sales, Inc. v. Sharp,* 910 S.W.2d 59, 61 (Tex.App.— Austin 1995, writ denied); *Teleprofits of Tex., Inc. v. Sharp,* 875 S.W.2d 748, 750 (Tex.App.—Austin 1994, no writ). A party claiming an exemption bears the burden of showing that the activity clearly falls within that statutory exemption; any doubt must be resolved in the Comptroller's favor. *See Quorum Sales,* 910 S.W.2d at 61; *Teleprofits,* 875 S.W.2d at 750; *Southwest Airlines Co. v. Bullock,* 784 S.W.2d 563, 566 (Tex.App.— Austin 1990, no writ). The Comptroller has

---

7. The Tax Code defines "real property repair and remodeling," in pertinent part, as "the repair, restoration, remodeling, or modification of an improvement to real property...." Tex. Tax Code Ann. § 151.0047(a) (West Supp.1999).

8. *See* Tex. Tax Code Ann. §§ 152.047, .0048(a)(3)(A) (West Supp.1999).

exclusive jurisdiction to interpret the scope of taxable services, subject to a reasonableness standard of review. *See Hammerman & Gainer,* 791 S.W.2d at 333 (court is bound to accept Comptroller's interpretation of scope of taxable services if that interpretation is reasonable). This Court may accept the statutory construction of the Comptroller as long as the construction is reasonable and does not contradict the plain language of the statute. *See Quorum Sales,* 910 S.W.2d at 62; *Teleprofits,* 875 S.W.2d at 752. The issue before us, therefore, is whether Associated Technics has met its burden of showing that the entire asbestos-abatement process falls within the tax exemption provided by section 151.0048(a)(3)(A). Stated another way, was it reasonable for the Comptroller to conclude that a portion of the asbestos-abatement process is "real property repair and remodeling" rather than the removal of hazardous waste?

We hold that the entire asbestos-abatement process must be characterized as the removal of hazardous waste. First, contrary to the Comptroller's argument, asbestos abatement is not two distinct activities. The entire process constitutes the removal and disposal of hazardous waste. Workers are constantly cleaning, even while separating the asbestos from the structure. This is a continuous process. The removal and disposal process does not consist solely of transporting the material to the landfill. The asbestos-abatement-services provider begins the removal process when it prepares the work area, and removal of the hazardous waste continues until the bags are finally deposited in the landfill.

Second, in construing a statute, a court may consider the object sought to be attained, the circumstances under which the statute was enacted, the statute's legislative history, common law or former statutory provisions, consequences of a particular construction, administrative construction, and the title, preamble, and emergency provisions. *See* Tex. Gov't Code Ann. § 311.023 (West 1998); *Park 'N Fly,* 969 S.W.2d at 574; *Teleprofits,* 875 S.W.2d at 750–51.

■ Of these factors, two are most relevant to an analysis of asbestos abatement.

We first consider the object sought to be attained by the legislature. When ascertaining the true meaning of a statute, a court must consider the societal problem addressed by the legislation. *See Teleprofits,* 875 S.W.2d at 751 (citing 2A Norman J. Singer, *Sutherland Statutory Construction* § 45.02, at 7 (5th ed.1992)). The Comptroller's interpretation of the two provisions removes the incentive to eliminate asbestos from buildings in order to improve public health.

> [T]he only means of preventing asbestos disease depends entirely on limiting the exposure of the individual to asbestos fibers. . . . The purpose of these sections is to establish the means of control and minimization of public exposure to airborne asbestos fibers ... by regulating asbestos disturbance activities in buildings that afford public access or occupancy.

25 Tex. Admin. Code § 295.31 (1998). Asbestos abatement results in the removal of a hazardous waste and thus is an improvement in public health. A tax exemption for asbestos abatement encourages the elimination of this hazardous substance. The legislature clearly intended to exempt this activity from taxation. *See* Tex. Tax Code Ann. § 151.0048(a)(3)(A) (West Supp.1999).

■ The second factor is the administrative construction of the statute. "Texas courts normally give weight to an agency's interpretation of a statute as long as that interpretation is reasonable." *Kitchens,* 873 S.W.2d at 791. But an agency's interpretation must not be contrary to the legislative intent of the statute. *See Southwest Airlines,* 784 S.W.2d at 568. The language in section 151.0048(a)(3)(A) implies a legislative intent to exempt the removal of all hazardous waste from taxation. The Comptroller narrowly construes "the removal of hazardous waste," determining that a portion of the abatement process does not fall within this language. However, the Comptroller ignores the mechanics of the asbestos-abatement process. Clearly, the asbestos-abatement-services provider is removing and disposing of asbestos from the time the work-site is prepared until the bags of asbestos are finally placed in a landfill. Even under the most narrow construction of "the removal of haz-

ardous waste," this phrase must include the entire asbestos-abatement process.

The exception of a particular activity from the operation of a statute indicates that, in the absence of the exception, the excepted activity would have been within the general scope of the statute. *See Hammerman & Gainer,* 791 S.W.2d at 333. The exception for the removal of hazardous waste in section 151.0048(a)(3)(A) is the legislature's affirmative declaration of what is not included as a taxable service. Because the "removal of hazardous waste" is specifically excluded from the definition of taxable "real property service" in section 151.0048, it cannot fall under the general scope of taxable "real property repair and remodeling" as defined in section 151.0047. The Comptroller's interpretation of sections 151.0047 and 151.0048 is unreasonable because it is contrary to the clear intent of the Tax Code. *See Sharp v. Cox Tex. Publications, Inc.,* 943 S.W.2d 206, 209 (Tex.App.—Austin 1997, no writ). The only reasonable interpretation of the two provisions, when read together, is that the entire asbestos-abatement process is exempt from sales and use tax because it constitutes the removal of a hazardous waste, and no part of the process constitutes real property repair and remodeling. Therefore, we overrule the Comptroller's two issues.

## CONCLUSION

Because the entire asbestos-abatement process constitutes the "removal of hazardous waste" and is exempt from taxation by section 151.0048(a)(3)(A) of the Tax Code, we affirm the judgment of the district court.