# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00510-CV

**Berry Contracting, L.P., Appellant**

**v.**

**Texas Workforce Commission, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
### NO. GN202914, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

Berry Contracting, L.P. appeals the decision of the district court, which affirmed a denial of an unemployment tax refund by the Texas Workforce Commission ("TWC"). The TWC refused to grant the unemployment tax refund after rejecting appellant's application for partial transfer of compensation experience under the labor code. *See* Tex. Lab. Code Ann. § 204.084 (West Supp. 2004).[1] We will affirm the judgment of the district court.

---

[1] The legislature amended portions of section 204.084 of the labor code in 2003. *See* Act of June 20, 2003, 78th Leg., R.S., ch. 817, §§ 7.01-.02, 2003 Tex. Gen. Laws 2513, 2532-33 (codified at Tex. Lab. Code Ann. § 204.084 (West Supp. 2004)). Because the specific portions of section 204.084 at issue in this appeal remain unchanged, we will cite to the current version of the statute.

## BACKGROUND

TWC collects unemployment-insurance taxes from employers to compensate those who are unemployed. *Id.* § 204.002 (West 1996). An employer's unemployment tax rate is based on the number of unemployment "chargebacks" attributable to that employer. *Id*. § 204.021 (West 1996). These chargebacks reflect the number of unemployed claimants who were previously employed by that employer. New employers are assigned an entry-level rate of 2.7 percent until they can establish a rate based on experience, unless an experience rate can be transferred from the previous employer. *Id.* § 204.006 (West 1996). The labor code provides for an experience rate to be transferred when all of an organization or business is acquired, or the rate can be partially transferred when part of an organization or business is acquired. *Id.* § 204.083 (West 1996), § 204.084.

In the summer of 2000, appellant implemented a tax-savings strategy, attempting to achieve a one-time tax benefit by transferring two employees with no unemployment chargebacks to a new entity and then, after establishing a more favorable unemployment tax rate based on these two employees, transferring three thousand other employees into the new entity.

To accomplish this strategy, in November 2000, Berry GP, Inc. formed appellant, a new entity. On December 1, 2000, Berry GP, Inc. transferred to appellant its in-house legal department, which consisted of one lawyer, a legal assistant, and the department's physical property. Both before and after the transfer, the legal department acted as an in-house general counsel to Berry

2

GP, Inc.[2] Later that same month, Berry GP, Inc. and appellant submitted to TWC a joint application for partial transfer of compensation experience from Berry GP, Inc. to appellant. *See id.* § 204.084(c)(3). TWC concluded that the labor-code requirements were not satisfied and denied the application.

If TWC had approved the application, appellant would have been entitled to an unemployment tax rate of 0.24 percent for 2001 due to the favorable compensation experience of the two legal department employees. Because TWC denied the application, appellant received a rate of 6.24 percent for 2001. This higher rate reflected the compensation experience of the three thousand employees transferred into appellant.

In 2002, after paying $2,009,751.52 under the higher tax rate, appellant filed an amended quarterly return for 2001 and requested a refund of $1,937,094.23. TWC denied the requested refund because it found that the compensation experience of the legal department was not "segregable" from Berry GP, Inc. *See id.* This lawsuit ensued, and after a bench trial on the merits, the district court entered a take-nothing judgment against appellant and denied its post-trial motions.

The district court affirmed the TWC decision that the legal department's compensation experience was not segregable. As an additional basis for its holding, the district court

---

[2] Berry GP, Inc. was in the heavy construction industry. The in-house legal department served a legal support role to the entire business. After the transfer, the legal department employees and property continued to occupy the same physical space, and the employees continued to perform the same support role.

concluded that, because Berry GP, Inc. indirectly owned and controlled appellant at the time the legal department was transferred, appellant had not "acquired" Berry GP, Inc. *See id.* § 204.084(a) (allowing employer to apply for transfer of compensation experience "[i]f an employing unit acquires a part of the organization, trade, or business of an employer"). Appellant now challenges the sufficiency of the evidence to support the district court's conclusions that appellant was not segregable and that there was no acquisition.

## DISCUSSION

The dispositive issue on appeal is whether the district court erred in concluding that:

No definitely identifiable and segregable part of the compensation experience in question is attributable to the part of the organization, trade, or business acquired, therefore the Application did not meet the requirements of [section] 204.084(c) of the Texas Unemployment Compensation Act.

Appellant contends the evidence is legally and factually insufficient to support this conclusion. When reviewing a no-evidence challenge, we consider all the evidence in the light most favorable to the judgment, making every reasonable inference in its favor. *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285-86 (Tex. 1998). When reviewing a factual-sufficiency challenge, we consider all the evidence and uphold the judgment unless we find that (1) the evidence is too weak to support the finding or (2) the finding is so against the overwhelming weight of the evidence as to be manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Sunbeam Envtl. Servs. v. Texas Workers' Comp. Ins. Facility*, 71 S.W.3d 846, 849-50 (Tex. App.—Austin 2002, no pet.).

4

We apply a deferential standard of review in cases involving agency decisions. *See Nabisco, Inc. v. Rylander*, 992 S.W.2d 678, 681-82 (Tex. App.—Austin 1999, pet. denied). Because the TWC is the agency that administers the Texas Unemployment Compensation Act, *see* Tex. Lab. Code Ann. §§ 301.061-.062 (West 1996), we give serious consideration to the agency's construction of its statutes, so long as the agency's interpretation is reasonable and does not contradict the statute's plain language. *See Stanford v. Butler*, 181 S.W.2d 269, 273 (Tex. 1944); *Texas Citrus Exch. v. Sharp*, 955 S.W.2d 164, 168 (Tex. App.—Austin 1997, no writ). Moreover, in determining the meaning of a statute, we consider the entire act, its nature and object, and the consequences that would follow from each construction. *Sharp v. House of Lloyd*, 815 S.W.2d 245, 249 (Tex. 1991); *see also* Tex. Gov't Code Ann. § 311.023(6) (West 1998).

The parties agree that section 204.084 of the labor code governs this dispute. The relevant part of the code states:

> (c)  The commission shall approve an application if:
>
> . . .
>
> (3)  a definitely identifiable and *segregable* part of the predecessor employer's compensation experience is attributable to the part of the organization, trade, or business acquired[.]

Tex. Lab. Code Ann. § 204.084(c)(3) (emphasis added). If this criteria, among others, is met, TWC shall approve the transfer of an experience rating when part of an organization or business has been acquired by a new employer. *Id.*

5

The heart of the dispute is whether the compensation experience of the legal department is "identifiable and segregable," a phrase the labor code does not define. TWC admits that the legal department is "identifiable" because each of the two employees within the department could be identified with a name and social security number. Thus, the dispute between the parties can be distilled into a single question: was the compensation experience of the legal department "segregable?"[3]

Because "segregable" modifies "compensation experience," TWC requires that the compensation experience of transferred employees can be separated from the predecessor business so that a new business is truly formed. TWC insists that it is not enough for an applicant seeking the benefit of a transferred compensation experience to merely select certain employees with no chargebacks, transfer them into a new entity, and identify them by their names and wages. Rather, TWC reads the statute to require that those identified employees, in order to carry their compensation experience with them to a new entity, must be *segregable* from the predecessor business in the sense that they are able to stand alone as a separate business entity and operate independently and separately from the predecessor.

Appellant argues that a straightforward interpretation of the statute requires only that the "compensation experience" be "identifiable and segregable." Thus, appellant reasons that,

_____

[3] Webster's dictionary defines segregable as "capable of being segregated." To segregate is defined: "to separate or set apart from others or from the general mass or main body," or to "isolate." *Webster's Third New International Dictionary* 2056-57 (1986).

because TWC can look to the two employees in the legal department, identify them by name and social security number, and see that those two employees have no unemployment chargebacks, appellant has satisfied this requirement. Put practically, appellant construes "segregable" to mean that the compensation experience of certain employees can be parsed on paper and recalculated.

TWC counters that appellant's interpretation uses "identifiable" and "segregable" interchangeably. Appellant's interpretation renders "segregable" surplusage, which contravenes a basic principle of statutory construction. *See Spradling v. Jim Walter Homes, Inc.*, 34 S.W.3d 578, 580 (Tex. 2000); *Borden, Inc. v. Sharp*, 888 S.W.2d 614, 620 (Tex. App.—Austin 1994, writ denied) ("We must give effect to all the words of a statute and may not treat any statutory language as surplusage."). Thus, TWC's position is that appellant's definition of the phrase "identifiable and segregable" merely satisfies the "identifiable" requirement. According to TWC, if it were enough to merely identify the employees and identify the wages, there would be no purpose to section 204.084.[4]

---

[4] The supervisor of TWC's tax department status section testified:

Q: Can you explain why [identifiable and segregable] do not mean the same thing?

A: Well, just in the case that we're talking about, it was possible to identify the individuals involved in the legal department. So sometimes we can—yes, we can see who they are, but we can't always segregate those individuals from the business as a whole. If they're integrated into the business in such a way that it is a support function for the business or it's a part of the business that does not—that's not clearly definitely able to be . . . pulled away from that business to continue to function in the same manner that it functioned before, then it wouldn't be considered to be segregable.

Readings of section 204.084 that circumvent or manipulate the experience rating system[5] are now explicitly foreclosed by the 2003 legislative amendments.[6] TWC concedes that the discretion now available to the agency to deny applications that seek to circumvent the experience rating system was not expressly available at the time appellant made its application. But even before the amendment, the statute required TWC to approve an application *only if* the requirements of the statute had been met. Tex. Lab. Code Ann. § 204.084(c). The question before us then is whether TWC's interpretation of "identifiable and segregable" is a reasonable interpretation of the statute.

In construing a statute—whether it is ambiguous or not—we may consider the administrative construction of the statute. Tex. Gov't Code Ann. § 311.023(6). TWC argued before the district court that the agency has been interpreting "identifiable and segregable" within section 204.084(c)(3) to mean "that the successor employer acquires and continues to operate a distinct and

---

[5] We note that appellant's interpretation would work with any combination of employees, regardless of their role within a business, and would allow a business to select a few employees with no chargebacks and restructure the corporation on paper each year, permitting the circumvention of a significant portion of the unemployment tax.

[6] In 2003, the legislature amended section 204.084 of the labor code to add subsection (d). Act of June 20, 2003, 78th Leg., R.S., ch. 817, §§ 7.01-.02, 2003 Tex. Gen. Laws 2513, 2532-33 (codified at Tex. Lab. Code Ann. § 204.084 (West Supp. 2004)). This new subsection expressly provides TWC the discretion to refuse an employer's application to transfer a compensation experience if TWC determines the taxpayer was seeking primarily to reduce its taxes by "circumventing the experience rating system" or "manipulating the experience rating system by minimizing the impact of chargebacks." *Id.*

separate business, able to operate independently from the predecessor employer." Furthermore, "because of the wording in the statute, which says definitely identifiable and segregable compensation experience attributable to that part of the business . . . it's our interpretation that definitely identifiable and segregable is more than just the compensation experience. It also had to do with the business operation being able to operate independently and separately from the predecessor." This long-standing construction placed on a statute by the agency charged with its enforcement is entitled to "great weight." *Southwest Airlines Co. v. Bullock*, 784 S.W.2d 563, 568 (Tex. App.—Austin 1990, no writ) (citing *Stanford*, 181 S.W.2d at 700).

In light of TWC's longstanding interpretation of "segregable," several facts point to why appellant was not able to operate independently and separately from the predecessor, and therefore failed to satisfy the requirements of section 204.084. The general counsel of the legal department testified that both before and after the transfer he had the same "boss." Berry GP, Inc. never hired a replacement general counsel; instead, the same general counsel continued to serve the same role—in the same physical space—although now technically employed by, and also serving as general counsel of, a different entity. Moreover, the tax advisor who advocated this tax-savings strategy, when testifying before the district court, referred to the transfer of employees as an "internal reorganization." We are persuaded that this was indeed an internal reorganization, not the creation of a new entity that was able to operate independently and separately from its predecessor.

Finally, TWC's interpretation of the statute is reasonable in light of the policy of the Texas Unemployment Compensation Act. *See Continental Cas. Co. v. Downs*, 81 S.W.3d 803, 807 (Tex. 2002) (affording serious consideration to construction of statute by agency charged with its

9

enforcement where that construction is reasonable and does not contradict statute's plain language). Taking the Act as a whole, it is clear that at least one purpose of the act is to prevent unemployment, and it should be construed so as to reward and encourage employers providing stable employment. *Rowan Oil Co. v. Texas Employment Comm'n*, 263 S.W.2d 140, 144 (Tex. 1953). The tax-rate table rewards employers by providing lower tax rates to those employers with fewer claimants to the fund. *See* Tex. Lab. Code Ann. § 204.042 (West 1996). When an employer with a favorable tax rate is acquired or reorganizes into a new business, the labor code rewards such an employer by allowing the transfer of compensation experience that the employer has earned. *See id.* § 204.084.

Appellant's reading of section 204.084 conflicts with this purpose. Berry GP, Inc. sought to escape from a less than favorable compensation experience by forming appellant and then transferring employees in two waves. First, Berry GP, Inc. transferred into appellant two employees with no unemployment chargebacks; then—within a few weeks—it transferred into appellant the remaining three thousand Berry GP, Inc. employees. To base appellant's compensation experience rating on the two employees transferred first, rather than the three thousand employees transferred second, would defeat the purpose of rewarding employers who have *earned* a favorable tax rate.

### CONCLUSION

We conclude the district court had sufficient evidence to find that the compensation experience of the legal department was not segregable from Berry GP, Inc. TWC had the authority to interpret the statute, and its interpretation was reasonable. We conclude that the district court did

10

not err in deciding that appellant's compensation experience was not segregable. We therefore affirm the final judgment of the district court.[7]

                                           _____

                                                Mack Kidd, Justice

Before Justices Kidd, B. A. Smith and Pemberton

Affirmed

Filed: May 20, 2004

---

[7] Because this issue is dispositive of the appeal, we need not address appellant's remaining issues.